EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re: <br><br> Víctor A. Ramírez de Arellano | 2008 TSPR 91 <br><br> 174 DPR _____ |

Número del Caso: TS-9179

Fecha: 20 de mayo de 2008

Abogado de la Parte Peticionaria:

                Por Derecho Propio

Oficina del Procurador General:

                Lcda. Noemí Rivera De León
                Procuradora General Auxiliar

Oficina de Inspección de Notarías:

            Lcda. Lourdes I. Quintana Lloréns
            Directora

Materia: Reinstalación al ejercicio de la abogacía

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Víctor A. Ramírez de Arellano

TS-9179

*PER CURIAM*

En San Juan, Puerto Rico, a 20 de mayo de 2008.

El peticionario Víctor Ramírez de Arellano fue admitido al ejercicio de la abogacía en el Estado Libre Asociado de Puerto Rico el 20 de enero de 1989. Fue suspendido el 23 de diciembre de 1996 y comparece solicitando su reinstalación al ejercicio de la profesión.

I

Los autos indican que el peticionario fue acusado en el Tribunal de Distrito de Estados unidos para el Distrito de Puerto Rico, por el delito de posesión de cocaína con intención de distribuirla. Hizo alegación de culpabilidad y desde su arresto en 1994 cooperó con las autoridades federales en

investigaciones confidenciales contra el trasiego de drogas. El 26 de septiembre de 1996 el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico le impuso al peticionario una sentencia de cuatro años de libertad supervisada. El 23 de diciembre de 1996 ordenamos la separación inmediata y definitiva del peticionario de la práctica de la notaría y el notariado en esta jurisdicción. Véase In re: Ramírez de Arellano, 142 D.P.R. 190 (1996).[1]

El peticionario cumplió con los términos y condiciones impuestos por la sentencia que le impuso el foro federal y el 29 de septiembre de 2000 se expidió una certificación acreditativa de ese hecho. Cinco años después, el 8 de noviembre de 2005, el peticionario solicitó ser reinstalado al ejercicio de la abogacía. Referimos la petición de reinstalación al Procurador General y a la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía. Ambas entidades sometieron sus informes y el peticionario respondió a estos.

---

[1] El peticionario había solicitado por derecho propio la renuncia voluntaria a la profesión legal el 18 de septiembre de 1996, lo cual se le concedió mediante Resolución el 11 de octubre de 1996. Después de emitida esa Resolución, el Procurador General de Puerto Rico nos informó sobre el arresto y alegación de culpabilidad del peticionario. Al amparo de la sección 9 de la Ley de 11 de marzo de 1909, 4 L.P.R.A. sec. 735 se puede desaforar a aquellos abogados que fueren convictos por delito grave que implique depravación moral. Reconsideramos entonces la renuncia voluntaria, la dejamos sin efecto y se procedió a cumplir con lo dispuesto en el precepto legal antes indicado. In re: Ramírez de Arellano, supra.

En cumplimiento de su encomienda la Comisión celebró vista el 30 de agosto y el 26 de octubre de 2006. El peticionario Víctor Ramírez de Arellano se representó por derecho propio durante todo el proceso. También participó el Lcdo. Alcides Oquendo Solís en su carácter de Procurador Especial de la Comisión. Concluida la presentación de la prueba testifical el 11 de enero de 2007 la Comisión le concedió tanto al Procurador General como al peticionario un término para someter por escrito sus respectivas posiciones. El Procurador General sometió su informe y el peticionario una Moción de réplica al informe.

Las vistas fueron de carácter público. Además de su testimonio, el peticionario presentó cuatro testigos: Dr. Ariel Sepúlveda, Dr. José Manuel del Río Ferrer, el Padre Fabián Rodríguez Rodríguez, y la Sra. Yelitza Paz Ramírez de Arellano, esposa del peticionario. Estos testigos testificaron sobre el comportamiento del peticionario después de la suspensión. El peticionario explicó las razones que él entiende le acreditan para recuperar la oportunidad de ofrecer servicios legales en esta jurisdicción.

En su Informe a la Comisión, el Procurador General expuso los testimonios vertidos en la vista. Pasamos a resumirlos a continuación.

El Dr. Ariel Sepúlveda Cuevas testificó que es ingeniero de profesión y conoció al peticionario en

actividades en la parroquia del Buen Pastor, particularmente en actividades de los niños escuchas. Indicó que el peticionario fue un recurso bien importante en las actividades, por sus destrezas y conocimientos. El peticionario le informó sobre su convicción desde el principio y su amistad ha transcendido al punto de que es padrino de uno de sus hijos.

El doctor Sepúlveda Cuevas declaró que nunca ha escuchado nada negativo del peticionario y opinó que éste goza de buena reputación en su comunidad. También explicó que el peticionario se ha encargado de unos sobrinos y los ha criado, junto con su esposa, como si fueran hijos propios. Nunca ha visto al peticionario en compañía de personas extrañas con apariencia de narcotraficantes. Al testigo le gustaría que el peticionario fuera su abogado.

El Dr. José Manuel Del Ríos, médico internista de profesión, testificó que conoce al peticionario desde hace más de diez años. Ha hecho negocios con el peticionario en el campo de la construcción y declaró que en ese campo el peticionario se distingue por ser tenaz y dedicado. Ha vivido por años en el mismo vecindario del peticionario y lo considera una persona honorable. El testigo nunca ha presenciado eventos que le hagan pensar que el peticionario está involucrado en actividades relacionadas al narcotráfico. Supo los detalles de la convicción de boca del propio peticionario. Aunque no ha compartido con el

peticionario socialmente, tiene amistades en común con él y comparten actividades como los niños escuchas, Centro Espibi (personas con necesidades especiales) y la parroquia.

El Padre Fabián Rodríguez es el párroco de la parroquia Católica del Buen Pastor en Mayagüez. Lleva 40 años en el sacerdocio y pertenece a la Orden de los Jesuitas. Informó que conoció al peticionario hace dos años, desde que comenzó a dirigir la parroquia, pues el peticionario y su esposa estaban involucrados con la liturgia de los niños y actividades para jóvenes. De hecho, el peticionario ofreció una charla sobre el aspecto legal de las drogas. Opina que el peticionario es una persona sensata, responsable, honesta, íntegra, comprometida y amigable. El testigo indica que se enteró que el peticionario es un convicto federal como resultado de este procedimiento, situación que pudiera tener algún efecto en la participación del peticionario con niños y jóvenes en la parroquia.

La Sra. Yelitza Paz de Ramírez de Arellano, es la esposa del peticionario desde el 14 de agosto de 1993 y han convivido ininterrumpidamente desde ese entonces. Considera a su esposo un hombre cabal, respetuoso, trabajador y no se explica cómo delinquió. Es cumplidor con la sociedad y buen vecino. Aunque no tienen hijos, han criado a unos sobrinos como si lo fueran. Declaró que el peticionario no ha fungido como abogado luego del desaforo, aunque se mantiene al día estudiando en la computadora y leyendo materiales y libros

que tiene en la casa. Utiliza sus conocimientos legales para aplicarlos a su negocio y a un caso que tiene, donde está representado por abogado.

Por su parte, el peticionario ofreció una descripción detallada de cómo se involucró en el tráfico de drogas y posteriormente, al ser arrestado, cooperó con la fiscalía sirviendo de encubierto, donde en ocasiones temió por su vida. Explicó que cuando practicaba la profesión, se dedicó al área criminal y por hacerle un favor a un cliente, le ofreció sus oficinas para que se encontrara con otro narcotraficante. Eventualmente, terminó traficando droga. Declaró que está sumamente arrepentido de sus errores y el daño que le causó a sus padres y su esposa. Sintió mucha vergüenza y aún se siente avergonzado. Asegura que no caerá en conducta similar ni en ninguna que atente contra los principios de la profesión ni la ética. Estaba bien orgulloso y disfrutaba de ejercer su profesión. De ser reinstalado, el peticionario ofreció dar charlas en las escuelas de derecho sobre el peligro potencial de involucrarse con los clientes en casos criminales y cómo es posible comprometerse con el cliente hasta el punto de delinquir.

Luego de resumir los testimonios, el Procurador General concluye lo siguiente:

> No tenemos duda alguna que el peticionario goza de buena reputación en la comunidad donde reside y donde se desenvuelve. Tampoco tenemos duda de que el peticionario está arrepentido de su

conducta delictiva y anti-ética previa. Aunque tampoco cuestionamos su interés en el derecho, la lectura y la utilización de sus conocimientos para aplicarlos en sus negocios, entendemos que podría beneficiarse de un curso de repaso de reválida, tal y como se le ha solicitado a otros peticionarios en ocasiones anteriores; esto, por el tiempo que ha transcurrido desde su desaforo y la falta de alusiones más concretas y específicas sobre materia de derecho.

El interés público se beneficiará al contar con un abogado que esté al tanto del desarrollo más reciente del derecho como también se beneficiará -por conducto de estudiantes de derecho y futuros abogados—de las charlas que ofreció el peticionario para compartir su experiencia muy particular.

Los hallazgos de la Comisión, según constan en su informe, a partir de las presentaciones orales y de los documentos sometidos, son los siguientes:

1. El peticionario se dedicó básicamente a una práctica criminal en Mayagüez, pueblo en el que nació, desde que juramentó ante el Tribunal Supremo de Puerto Rico en 1989. Su práctica era bastante exitosa y empezó a atender clientes con asuntos de drogas y sustancias controladas. La asesoría legal a alguno de estos clientes excedió los límites apropiados y comenzó a participar en la facilitación de negocios delictivos de distribución de drogas. Fue arrestado por agentes federales y comenzó en 1994 a cooperar con las autoridades federales porque desde un principio aceptó que se había apartado de los valores que le habían inculcado sus padres. De hecho, se cuestionaba cómo había sido tan inmaduro. <u>Es decir, el peticionario ha estado arrepentido de los hechos que cometió desde antes de que fuera sentenciado y ha hecho todo lo posible para subsanar ese error de juicio.</u> Estuvo aproximadamente dos años viviendo en el área metropolitana como confidente federal y eventualmente en 1996 fue condenado bajo los términos de una sentencia muy favorable (cuatro años de libertad supervisada).

2. El peticionario regresó a Mayagüez en 1998 y comenzó a dedicarse a dirigir una empresa de construcción, oficio al cual sigue dedicado al presente. Ha obtenido la licencia de corredor de bienes raíces.

3. Desde que regresó a Mayagüez participa activamente en la parroquia de su vecindario y fue líder de la tropa de niños escuchas. De hecho le explicó a los organizadores de su convicción y aunque a nivel de distrito no había objeción a nivel regional si se opusieron y se retiró del trabajo activo en la tropa después de varios años de labor meritoria y responsable.

4. El peticionario nunca ha sido usuario de drogas y/o sustancias controladas. No mantiene relaciones de trabajo o sociales con personas que puedan relacionarse con conducta antisocial o con reputación negativa en su comunidad.

5. El peticionario siempre ha explicado con candidez que fue separado de la profesión legal por razón de una convicción relacionada con tráfico de drogas. Aunque en la comunidad de su vecindario y el mundo comercial de Mayagüez se sabe de esos hechos el peticionario ha logrado recuperar su buena reputación y prestigio. El testimonio de los testigos no dejan duda sobre la buena imagen del peticionario en estos momentos. Todos ellos atestiguan elementos de honestidad, responsa-bilidad, diligencia y sobre todo confiabilidad en la persona del peticionario.

6. El peticionario se ha mantenido al tanto de los desarrollos en el Derecho mediante uso de los espacios cibernéticos del Colegio de Abogados de Puerto Rico y de LexJuris. También ha tomado seminarios en el Instituto Hostosiano. Por demás, sus labores en el mundo de la construcción le ha requerido entrar en contacto con abogados representen [*sic*] en asuntos administrativos o judiciales o funcionarios gubernamentales para que le concedan autorizaciones por lo que ha tenido oportunidad de repasar esos conceptos legales. También lee los últimos desarrollos legislativos como el nuevo Código Penal y lo comenta con amigos abogados.

7. Con excepción de la suspensión indefinida no existe querella o reclamación alguna de naturaleza ética (antes o después de la convicción por delitos graves) presentado [*sic*] contra el peticionario en el Colegio de Abogados de Puerto Rico, la Oficina del Procurador General o el Tribunal Supremo de Puerto Rico.

8. Como parte de su compromiso moral de ayudar a otras personas a no cometer los errores que él cometió ha dado charlas con la Policía de Puerto Rico sobre drogas. Él mismo expuso que aceptaría de buen grado que le requieran como condición de admisión el ofrecer charlas sobre este tema a los estudiantes de Derecho o abogados. (Énfasis nuestro.)

Analizados los hallazgos de su investigación, la Comisión acordó recomendar la reinstalación del Sr. Víctor Ramírez de Arellano al ejercicio de la abogacía en Puerto Rico.

III

En *In re: Pacheco Nieves* expusimos los criterios generales que debían tomarse en consideración al evaluar una solicitud de reinstalación:

> ... la persona que solicita ser reinstalada al ejercicio de la profesión de abogado tiene la obligación de demostrar no sólo que el término de la suspensión, o separación, de la profesión decretada ha sido uno suficiente, sino que debe demostrar que goza de buena reputación y que su integridad moral, al momento de la solicitud de reinstalación, le hacen merecedor de ser readmitido al ejercicio de la profesión de abogado. *In re*: Pacheco Nieves, 135 D.P.R. 95, 199 (1994).

El peso de probar su integridad moral recae sobre el peticionario, quien debe demostrar "que su conducta moral ha

variado hasta alcanzar el grado y medida necesarios en que ese atributo resulta indispensable para estimarle capacitado para descargar intelectual y éticamente los deberes y obligaciones que se esperan de todo abogado." *In re: Cardona Vázquez*, 112 D.P.R. 686, 689 (1982) (citas omitidas).

Cuando el peticionario ha sido separado del ejercicio de la abogacía por una convicción criminal, su inocencia o culpabilidad no debe ser relitigada en el proceso de reinstalación. Como explicamos en *In re: Pacheco Nieves*, *supra*, pág. 99: "La controversia a dilucidar, en estos momentos, es si la conducta del peticionario lo hace, hoy día, merecedor de ser abogado." *Id. a* la pág. 99.

Luego de analizar todos los elementos presentes en este caso, concluimos que el Sr. Víctor Ramírez de Arellano ha cumplido con su obligación de presentar prueba robusta y convincente que justifica su reinstalación. Su testimonio y el de los testigos presentados ante la Comisión, unido a la recomendación de ésta y la del Procurador General, nos convence de que ha logrado su rehabilitación. El Peticionario ha demostrado que tiene, actualmente, la integridad de carácter necesaria para ofrecer una representación legal digna y confiable a los ciudadanos de este país. Las personas que se han relacionado con él desde que cumplió su sentencia no tienen dudas respecto a su competencia, pero más importante, no tienen dudas en lo que

respecta a su solvencia moral y ética. Además, la Comisión concluyó que el peticionario se ha mantenido al día en el estudio de temas jurídicos. Coinciden los comisionados con la opinión del Procurador General de que la readmisión del peticionario a la práctica de la profesión legal no constituye una amenaza a sus potenciales clientes, el sistema de administración de justicia o a la imagen de la profesión legal.

Procede, por tanto, decretar la reinstalación de Víctor Ramírez de Arellano al ejercicio de la profesión de abogado.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Víctor A. Ramírez de Arellano

TS-9179

*SENTENCIA*

En San Juan, Puerto Rico, a 20 de mayo de 2008.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte integrante de la presente Sentencia, se decreta la reinstalación de Víctor Ramírez de Arellano al ejercicio de la profesión de abogado.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Rivera Pérez no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo